Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Frederick J. Kapala | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 50094 | **DATE** | 11/5/2012 |
| **CASE TITLE** | Shaw v. McClain, et al. | | |

**DOCKET ENTRY TEXT:**

Defendants' motion to dismiss [31] is denied.

■[ For further details see text below.]

Docketing to mail notices.

---

Plaintiff, Colten Shaw, initiated this action against Orangeville Community Unit School District 203, the school superintendent Randall Otto, teacher Toby Golembiewski (together with the District and Otto as the "School Defendants"), Stephenson County Sheriff Davis Snyders, Deputy Sheriff Wendell McClain, and other unnamed deputies claiming violations of his rights under 42 U.S.C. § 1983 and state law. Specifically, Shaw alleges that as part of a safety drill at his high school, McClain, while acting under a plan jointly created by Snyders, McClain, and the School Defendants, entered the high school with a cap gun, masqueraded as an armed gunman, and sought out Shaw specifically. Shaw alleges that he was terrified that he would be killed, and that he was detained and questioned concerning the incident, all without being informed that he was a participant in a safety drill. Shaw settled his claims with the School Defendants, leaving only Snyders, McClain, and the other unnamed deputies. Currently before the court is the remaining defendants' motion to dismiss Shaw's state law claims based on Illinois' Local Governmental and Governmental Employees Tort Immunity Act, 745 ILCS 10/1-101 et seq. For the reasons that follow, that motion is denied.

## I. BACKGROUND

According to the complaint, on May 6, 2011, the Orangeville Junior/Senior High School underwent a "school safety drill." That drill, planned by Snyders, McClain, Golembiewski, and Otto, was to include McClain, the sheriff department's only black deputy, entering the school unannounced with a cap gun and playing the part of a school shooter. The students were not informed of the drill in advance and the students' parents were only informed one hour before the drill was to commence and were instructed not to warn their children. Under the plan, McClain was to pretend to be searching for a specific student—Shaw—who was to be threatened and chased by McClain from the school. On his return to school, the plan allegedly called for Shaw to be told that one of the secretaries was killed by the armed intruder. Thereafter, Shaw was to be taken into custody and questioned about the shooter and his relationship to Shaw. Only after the interrogation was Shaw to be told that the entire incident was a drill.

On May 6, 2011, McClain allegedly entered the school by way of the office and fired two shots from his cap gun. Shaw, who was in gym class, heard the shots. McClain entered the gym, brandished his weapon, and announced that he was looking for Shaw. Shaw, along with the other students, fled the gym and hid in nearby bushes. Golembiewski, who was with Shaw in the bushes, told Shaw he should go back and speak with the

shooter, but Shaw refused. When Shaw refused, Golembiewski gave Shaw his cell phone, and Shaw fled to a nearby friend's house. Sometime shortly thereafter, the rest of the students were informed that the incident was a drill.

While at his friend's house, Shaw received a call from Golembiewski who indicated that the intruder was in custody, but that a school secretary had died in the incident. On his way back to the school, Shaw saw McClain in the custody of two Stephenson County Sheriff's deputies. At the school, Shaw was taken into the school's office by deputies and interrogated as to his relationship with McClain and his involvement in drug trafficking. Shaw alleges that he did not feel free to leave during the interrogation. After the interrogation, Shaw was informed that the entire incident had been a safety drill.

In his amended complaint, Shaw alleges a § 1983 claim for false arrest in violation of his Fourth Amendment rights against McClain and the other unknown deputies (Count III) and state claims against McClain and Snyders for assault (Counts IV & V), intentional infliction of emotional distress (Counts VI & VII), and civil conspiracy (Counts XIV & XV). McClain and Snyders moved to dismiss all of the above-mentioned counts except Count III. In their motion, defendants argue that 745 ILCS 10/2-201 immunizes them from any liability for state claims arising from the May 6, 2011 drill.[1]

## II. ANALYSIS

When deciding a defendant's motion to dismiss, a court accepts all of the well-pleaded allegations of the complaint as true and draws all reasonable inferences in favor of the plaintiff. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Killingsworth v. HSBC Bank Nev., N.A., 507 F.3d 614, 618 (7th Cir. 2007). To state a claim under the Federal Rules, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[D]etailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quotation marks omitted). In analyzing whether a complaint has met this standard, the "reviewing court [must] draw on its judicial experience and common sense." Id. at 679.

Defendants argue that they are immunized from liability on the state law claims under § 2-201 of the Illinois Local Governmental and Governmental Employees Tort Immunity Act. See 745 ILCS 10/2-201. Section 2-201 states that "[e]xcept as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." Id. Section 2-201 has been interpreted to provide absolute immunity to public employees exercising discretion in the determination of policy. See Murray v. Chi. Youth Ctr., 224 Ill. 2d 213, 229-30 (2007). Defendants argue that because on-site participation in a school safety drill by law enforcement is permitted—but not required—by Illinois law, the decision by Snyders to have the sheriff's department participate and the planning of the safety drill itself are a discretionary policy decisions that activate § 2-201's absolute immunity. See 105 ILCS 128/20(c)(1)(A) ("During each calendar year, the appropriate local law enforcement agency shall contact the appropriate school administrator to request to participate in a law enforcement drill and may actively participate on-site in a drill.").

Shaw argues, on the other hand, that § 2-201 does not apply to this case, but instead the court should apply another Illinois statutory provision, 745 ILCS 10/3-108(a), which states:

> Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury.

Shaw posits that the more specific statute at § 3-108(a)—which applies only to cases involving supervision by public employees—should be applied in place of the more general § 2-201. See Murray, 224 Ill. 2d at 233 (holding that a more specific immunity section should prevail over § 2-201 because "[i]t is a well-settled rule of

statutory construction that where there are two statutory provisions, one of which is general and designed to apply to cases generally, and the other is particular and relates to only one subject, the particular provision must prevail" (alteration and quotation marks omitted)). This is critical, according to Shaw, because § 3-108(a) has an exception to public officer immunity when the conduct is "willful and wanton," an exception that is lacking in § 2-201.[2]

Illinois' public employee immunity was established to "replace sovereign immunity" and is intended to "protect[] local public entities and public employees from liability arising from the operation of government." Id. at 228-29. However, it is to be "strictly construed against the public entity seeking immunity" and it is the burden of the defendants to prove they are entitled to immunity. Robinson v. Wash. Twp., 2012 IL App. (3d) 110177, ¶9. Accordingly, "[u]nless an immunity provision applies, municipalities are liable in tort to the same extent as private parties." Murray, 224 Ill. 2d at 229.

Based on the allegations set out in the amended complaint, and without the additional factual record that will be developed through discovery, the court is not convinced at this point in the litigation that § 2-201 applies. "Under § 2-201, a public employee is immune from liability only if he both determines policy and exercises discretion." Torres v. City of Chi., 123 F. Supp. 2d 1130, 1133 (N.D. Ill. 2000). "The employee's position thus may be one which involved either determination or exercising discretion, but . . . the act or omission must be both a determination of policy and an exercise of discretion." Harinek v. 161 N. Clark St. Ltd. P'ship, 181 Ill. 2d 335, 341 (1998) (emphasis added). "[D]iscretionary acts are those which are unique to a particular public office, while ministerial acts are those which a person performs on a given state of facts in a prescribed manner, in obedience to the mandate of legal authority, and without reference to the official's discretion as to the propriety of the act." Id. at 343 (quotation marks omitted).

First, the court notes that it is not clear that any of the decisions made in planning the May 6, 2011 safety drill plan were discretionary. According to Illinois' School Safety Drill Act, law enforcement drills, like the one in this case, "must be conducted according to the school district's or private school's emergency and crisis response plans, protocols, and procedures, with the participation of the appropriate law enforcement agency." 105 ILCS 128/20(c) (emphasis added). The drill, then, should have been conducted according to the plan, protocol, or procedure of the school district as set out in § 20(c), and the defendants may have had no discretion at all depending on the specificity of the plan, protocol, or procedure. At this point, the parties have not included any such school district plan, protocol, or procedure in their pleadings, so the court is unable to determine either whether the planners had any discretion in making the May 6, 2011 plan or whether the plan deviated from the policy of the school district. See Torres, 123 F. Supp. 2d at 1133-34 (holding that officers that failed to follow written regulations on how to secure a crime scene and help a victim did not engage in a discretionary act under § 2-201); see also Richards v. Mitcheff, ___ F.3d ____, No. 11-3227, 2012 WL 3217627, at *1 (7th Cir. Aug. 9, 2012) ("What a complaint must plead is enough to show that the claim for relief is plausible. Complaints need not anticipate defenses and attempt to defeat them.").

Furthermore, § 20(c) calls into question whether the sheriff would be empowered to make policy decisions in school safety drills if there was not a pre-existing school district policy. As set out above, it is the school district's plans, protocols, and procedures that must be followed, not the sheriff's. Therefore, even if there was no pre-existing policy to guide the creation of the May 6, 2011 plan, it appears that the school district was the party empowered with the discretion to create the May 6, 2011 plan, not the sheriff's office. See Harinek, 181 Ill. 2d at 342 (holding that § 2-201 applied because, in part, "[t]he fire marshal is responsible for planning and conducting fire drills in the City of Chicago").

Additionally, even if there was no pre-existing policy and the sheriff was empowered with the discretion to make policy for the school district, defendants' argument concerning § 2-201 rests on the allegation that Snyders and McClain helped "plan" the May 6, 2011 safety drill. However, the pleadings do not set out what part Snyders and McClain played in the planning. If all Snyders and McClain did to plan the May 6, 2011 safety drill was to provide available dates and the number of available officers, they cannot be said to have exercised

their discretion in planning the intentional infliction of emotional distress and assault that Shaw is complaining about. Indeed, the complaint alleges that one of the critical discretionary determinations in this case—that Shaw should be the targeted student—was not made by Snyders or McClain, but was instead made by the School Defendants. Nevertheless, it is the defendants' burden to provide the facts necessary to establish that immunity applies and the plaintiff is under no obligation to anticipate and plead around the defendants' affirmative defenses. See Richards, 2012 WL 3217627, at *1. Accordingly, until it can be established through discovery what part Snyders and McClain had in planning the May 6, 2011 safety drill, this court is unable to determine if they exercised their discretion or made a policy decision for the purposes of § 2-201 immunity.

Finally, additional factual development is necessary to determine whether § 2-201 applies or whether the more specific § 3-108(a)—which immunizes government supervisors so long as they did not act willfully or wantonly—applies. Although it is a reasonable inference from the amended complaint that someone supervised the emergency drill, it is not clear whether school officials or deputies from the sheriff's office took on that supervisory role. This determination may end up being critical to this case, as the allegations in Shaw's complaint, if proven, may rise to the level that a reasonable juror could find that Snyders and McClain acted willfully or wantonly in their violation of his rights.

## III. CONCLUSION

For the foregoing reasons, the court finds that at this stage of the litigation, the record is not sufficiently developed to determine whether the defendants are entitled to immunity under § 2-201. See Thompson v. Evans, No. 11 CV 1712, 2012 WL 401503, at *2 (N.D. Ill. Feb. 6, 2012) (denying motion to dismiss based on § 2-201 to await further factual development); Murphy v. Vill. of Plainfield, No. 08 CV 3293, 2009 WL 900766, at *7 (N.D. Ill. Mar. 31, 2009) (same): S.G. v. Rockford Bd. of Educ., No. 08 C 50038, 2008 WL 5070334, at *8 (N.D. Ill. Nov. 24, 2008) (same); Stenson v. Town of Cicero, No. 03 C 6642, 2005 WL 643334, at *12 (N.D. Ill. Mar. 15, 2005) (same). Accordingly, the motion to dismiss is denied.

---

1. In their motion, defendants do not, and could not, move to dismiss Shaw's § 1983 claim based on § 2-201. See Thomas, 401 F. Supp. 2d at 875 ("[T]he Illinois Tort Immunity Act does not shield the defendants from Thomas' Section 1983 claims, because under the Supremacy Clause of the United States Constitution, federal laws are supreme to state laws. Therefore, a state law may not shield a defendant from a federal claim, and Section 2-201 of the Illinois Tort Immunity Act does not shield the defendants from liability here.").

2. The court notes, however, that the complaint never directly alleges wanton or willful conduct. Shaw, instead, relies only on the inference that the conduct, as pled, shows that the defendants acted wanton and willfully.